UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY L. LEWIS | ) |
| | ) |
| Plaintiff, | ) No. 16 C 7870 |
| | ) |
| v. | ) Magistrate Judge Susan E. Cox |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey L. Lewis ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief [Dkt. 15] to reverse the Decision of the Commissioner of Social Security, and Defendant responded with a motion for summary judgment [Dkt. 16]. We hereby construe Plaintiff's brief in support of reversing the decision of the Commissioner as a motion. For the following reasons, Plaintiff's motion is granted and the Commissioner's motion is denied. The Administrative Law Judge's ("ALJ") decision is remanded for further proceedings consistent with this opinion.

**I. Background**

    **a. Procedural History and Claimant's Background**

Plaintiff filed an application for disability insurance benefits on July 31, 2012 with an alleged onset date of disability of May 18, 2004. [Record ("R.") 166.] His last day of work coincided with his alleged onset date. [*Id.*] Plaintiff was last insured for disability insurance benefits on December 31, 2010. [R. 18.] To obtain benefits, Plaintiff would have to establish

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

disability onset on or before his date last insured, which was December 31, 2010. *See* 42 U.S.C. § 416(i).

During the application process for disability insurance benefits, Plaintiff claimed that he stopped working on the alleged onset date due to a combination of physical impairments: high blood pressure, lower back pain, high sugar level, and bad knees. [R. 202.] Plaintiff's relevant past work consisted of one occupation: from January 1979 through May 2004, he worked as a yard manager at the Chicago Transportation Authority ("CTA"). [R. 40, 203.] In this role, Plaintiff controlled about 20 switchmen, maintained the rolling stock, pulled carts into the yard, stored and repaired carts, and was responsible for adding and cutting the number of trains during rush hours. [R. 204.]

Plaintiff's disability insurance benefits application was denied initially on January 8, 2013, and again upon reconsideration on June 13, 2013. [R. 17.] Thereafter, Plaintiff requested an administrative hearing, which was held on February 23, 2015 before ALJ Regina M Kossek. [R. 17-26, 91.] At his hearing before the ALJ, Plaintiff testified that he was admitted to the hospital for six days in May 2004 due to high blood pressure and dizziness. [R. 41.] Plaintiff testified that he received short term disability from the CTA following his hospitalization. When his short term disability benefits expired, the Plaintiff did not apply for long term disability benefits because he had income through rental properties and claimed that he "didn't really get fully informed as to my rights to my benefits." [R. 43.] Plaintiff also testified that he did not make a claim for worker's compensation benefits because his brother passed away around the same time "and [Plaintiff] didn't exercise the rights that [he] should at the time . . . they should have been exercised." [R.45.] Instead, Plaintiff took early retirement from the CTA because he did not feel he could perform his job as a yard manager. [R. 42, 44.] Plaintiff posited two

2

reasons why he could no longer perform his duties. First, the dizziness that had led to his hospitalization made working around heavy moving equipment perilous. [R. 50.] Second, he stated that he could no longer do the walking and climbing that his work required because his back pain was too severe. [R. 44.]

The medical treatment documentation in the administrative record is fairly sparse. The majority of the medical records consists of treatment notes from Dr. Claudia Johnson, M.D., of the Claude Mandel Clinic. The treatment notes are from visits between June 2011 and November 2014 (all after Plaintiff's date last insured), and show that Plaintiff regularly reported knee and back pain. There is very little in the way of objective findings or plans for Plaintiff's care in the notes, and there are no diagnostic tests. On March 8, 2013, Dr. Johnson completed a Physical Residual Functional Capacity Questionnaire. [R. 279-82.] Dr. Johnson reported that Plaintiff suffered from daily back and knee pain that was aggravated by standing; she further opined that he would be limited to one hour of standing and 45 minutes of sitting at one time, and could sit for four hours and stand/walk for two hours in an eight-hour workday. [R. 280-81.] Dr. Johnson also claimed that Plaintiff could walk two blocks without rest or severe pain. [R. 280.] Plaintiff's counsel attempted to subpoena older records from the Claude Mandel Clinic, but was unable to do so. Plaintiff requested a subpoena from the ALJ on the Friday, February 20, 2015, which was shortly before the ALJ hearing on Monday, February 23, 2015; at the hearing, Plaintiff's counsel stated that he had been trying to get the older record from the Claude Mandel Clinic since December 2013, but despite getting "every indication . . . that they were going to comply and produce these records," the clinic did not provide Plaintiff with the records. [R. 34-35.] As a last resort, Plaintiff filed the late subpoena to alert the ALJ to the fact that the records were not available. [R. 35-36.] On three occasions, the ALJ asked Plaintiff's counsel

3

"how dare [he]" seek such a late subpoena, and stated that she found it "disrespectful to the process." [R. 33-34, 36.]

On March 23, 2015, the ALJ denied Plaintiff's claim, finding that Plaintiff was capable of performing his past relevant work as a yardmaster as generally performed, thus making him not disabled within the meaning of the Social Security Act. [R. 25.] The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1.] The ALJ's decision is currently under review by this Court under 42 U.S.C. § 405(g).

b.  **The ALJ's Decision**

The ALJ issued a written decision on March 23, 2015 following the five-step analytical process required by 20 C.F.R. 404.1520. [R. 14-26.] As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2010. [R. 19.] At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date of May 18, 2004 through the date last insured of December 31, 2010. [*Id*.] At step two, the ALJ concluded that Plaintiff had the severe impairments of degenerative disc disease and osteoarthritis. [I*d*.] Other impairments were determined to be non-severe. [R. 20.] At step three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [*Id*.] Prior to step four, the ALJ found that through the date of last insured, Plaintiff maintained the residual function capacity ("RFC") to perform light work, except that Plaintiff could frequently climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, and crawl. [R. 21.]

In making this finding, the ALJ determined Claimant's creditably to be "somewhat limited" and his symptoms to be "unsupported and inconsistent with the medical records." [R.

4

23.] Factors considered by the ALJ included minimal treatment received by Claimant (2-3 doctor visits per year, no aggressive treatment) as of his date last insured, failure of Claimant to seek disability or worker's compensation upon retirement, no emergency room visits, and Claimant's testimony that his alleged degenerative condition had not worsened since 2009-2010. [R. 23.]

Second, the ALJ gave extremely minimal weight to the medical opinion of Claimant's treating physician, Claudia M. Johnson, M.D., and the RFC questionnaire she completed on March 8, 2013. [R. 23.] The ALJ determined Dr. Johnson's opinion to be speculative, based in Claimant's subjective complaints, and "inconsistent with the longitudinal medical record," which consisted of "no aggressive treatment, no imaging or clinical findings, and no emergency room visits or hospitalizations to support [Dr. Johnson's] assessment." [R. 23, 24.] Furthermore, the ALJ found Dr. Johnson's RFC assessment used a check-list form, lacked explanation, was completed more than two years after claimant's date last insured, did not specify a time period for which her opinion applied, and contradicted her earlier statements which indicated Claimant's treatment posed no restrictions on his work ability. [R. 24.]

Third, the ALJ did not weigh the opinion of the Medical Expert who testified at Claimant's hearing because the expert did not have access to the medical record at the time of the hearing and thus could not provide a certain RFC assessment. [*Id.*]

Fourth, the ALJ gave little weight to the opinion of State agency medical consultants, who determined Claimant's only severe impairment was hypertension. The ALJ determined medical evidence received through the hearing level indicated claimant's hypertension was controlled with medication. [*Id.*]

Furthermore, the ALJ – citing HALLEX I-2-5-78 - denied Claimant's subpoena request to obtain treatment records from Claude Mandel Clinic that potentially dated to 2009 and 2010

[R. 17, 35, 161.] The ALJ denied Claimant's subpoena request because the request was made less than five days before the hearing date. [R. 17.] Additionally, the ALJ determined the evidence in question was not reasonably necessary for full presentation of Claimant's case. [*Id.*] Claimant's file contained more recent medical records from the Claude Mandel Clinic than those requested through subpoena. [*Id.*] According to the ALJ, because Claimant's alleged disabling condition is degenerative, the more recent medical records included in the file should be more indicative of claimant's condition than the earlier records. [*Id.*]

At step four, the ALJ concluded Plaintiff was capable of performing his past relevant work as a yardmaster as generally performed. [R. 25.] In reaching this conclusion, the ALJ relied on the VE's testimony, determining Plaintiff performed the job as yardmaster at the medium exertional but that the position is generally performed in the economy at the light exertional level within Plaintiff's RFC limitations. Because the ALJ determined Plaintiff to be capable of performing past relevant work as a yardmaster, Plaintiff was found not disabled as defined by the Social Security Act. [*Id.*]

c. **Issues Before the Court**

Plaintiff now challenges the ALJ's RFC findings on four grounds. First, Plaintiff contends that the ALJ failed to properly consider the medical opinions of Plaintiff's treating physician and the medical expert that testified at Plaintiff's administrative hearing. [Dkt. 15 at 4–8.] Second, Plaintiff argues the ALJ's RFC assessment lacks substantial evidentiary support. [Dkt. 15 at 8–11.] Third, Plaintiff contends the ALJ did not properly evaluate Plaintiff's symptoms. [Dkt. 15 at 11–15.] Finally, Plaintiff argues the ALJ erred in her duty to fully develop the record. [Dkt. 15 at 15–16.] Because the Court remands on Plaintiff's first contention, the Court need not reach the other issues, but does provide some guidance to the ALJ on remand, as

6

discussed below.

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a standard five-step test inquiry to assess whether a claimant suffers from a disability as defined in the Social Security Act. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the severe impairment meets or equals impairment listed by the Commissioner; (4) whether the claimant is capable of performing past relevant work; and (5) considering the claimant's age, education, and prior work experience, whether they are capable of adjusting to other work in the national economy. 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step, or at steps 3 and 5, a finding of disabled. A negative answer at any point other than step 3 leads to a finding of not disabled. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). The burden of proof rests with the claimant in steps one through four, and shifts to the Commissioner in step five. *Id.*

Section 405(g) of the Compilation of The Social Security Laws states "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining if the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck,* 357 F.3d at 699. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). In reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of

the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699.

Although not required to address every piece of evidence when denying benefits, "the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). The reasoning must "build an accurate and logical bridge form the evidence to his conclusion," sufficient to allow a reviewing court an ability to assess the findings and provide the claimant meaningful judicial review. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *Clifford*, 227 F.3d at 872. "An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

**III. Discussion**

    **A.    The ALJ Failed to Properly Weigh the Medical Opinion Evidence**

Pursuant to 20 C.F.R. § 404.1527(c), ALJs are required to "evaluate every medical opinion [they] receive." For treating physicians, if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the treating physician's opinion is given controlling weight. 20 C.F.R. § 404.1527(c)(2). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ is to consider the following factors in determining what weight to give the opinion: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the

record as a whole; 5) the treating physician's specialty, if any; and 6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ "will always give good reasons in [the] notice of determination or decision for the weight [the ALJ] give[s] [the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). Treating physicians are not the only opinion weighed in this manner; "[r]egardless of its source," the ALJ "will evaluate every medical opinion [the ALJ] receive[s]," and consider all of the factors listed above. 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ gave Dr. Johnson's opinion "extremely limited weight because it is inconsistent with the longitudinal medical record." [R. 23.] In particular, the ALJ believed that the record lacked "aggressive treatment," "imaging or clinical findings," and "emergency room visits or hospitalizations . . . which one would expect given the restrictive limitations [Dr. Johnson] assessed." [R. 24.] The ALJ further reasoned that "the checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding her functional limitations without any rationale for those conclusions." [R. 24.]

The Court does not believe that these qualify as "good reasons" for deciding to give Dr. Johnson's opinions "extremely limited weight." First, the ALJ is drawing conclusions from the evidence without any basis in fact. There is no indication as to how or why the ALJ concluded that the RFC questionnaire was "completed as an accommodation to the claimant," and this represents rank speculation on the part of the ALJ that is presented as evidence. Second, the ALJ does not have any evidence or medical expert testimony to support her conclusion that "one would expect" additional medical treatment to support Dr. Johnson's proposed limitations on Plaintiff's work abilities. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (ALJ impermissibly "played doctor" by finding that claimant's condition was "less serious because it

9

was treated only with oral medication and not with insulin therapy," when "no doctor gave any reason why insulin was not prescribed"); *see also*, *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong").

Even if the ALJ had given sufficient reasons for failing to assign controlling weight to Dr. Johnson's treating physician opinion, she failed to consider any of the factors described above. For example, the ALJ failed to give any consideration to Dr. Johnson's longstanding treatment history with the Plaintiff, even though, as a treating physician, Dr. Johnson is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative or brief hospitalizations." *See* 20 C.F.R. § 404.1527(c)(2). In fact, the ALJ failed to consider those factors when assigning weight to *any* of the medical opinions in this case. [*See* R.24.] The ALJ also refused to weigh the opinion of the medical expert "because the medical expert did not have access to the medical record at the time of the hearing and he did not provide an assessment with certainty." [R. 24.] Instead of ensuring that a complete record was developed by providing the medical expert with those materials or with time to review them, the ALJ abdicated her responsibility to both adequately develop the record and to properly weigh all medical opinion evidence. In short, the ALJ failed to properly weigh the medical opinion evidence in this case, requiring remand to engage in the necessary discussion of that evidence pursuant to the relevant regulations and case law.

B. **Other Issues on Appeal**

Because the Court remands on this issue, it need not reach the other issues raised by the

Plaintiff on appeal. However, the Court notes that the ALJ refused to issue a subpoena for records from Plaintiff's treating physician for a period that pre-dated the date last insured, citing HALLEX I-2-5-78. While the Court understands that the provision cited by the ALJ is permissive (*i.e.*, the ALJ "may issue a subpoena"), it allows the ALJ to subpoena such records "[w]hen it is reasonably necessary for a full presentation of the case." HALLEX I-2-5-78. The ALJ claimed that the records were not necessary for the case because "claimant's allegedly disabling condition is degenerative, the more recent records should be indicative of the claimant's condition at the earlier date." [R. 17.] The ALJ reached this conclusion without citing any medical evidence or testimony to support it. The more prudent course of action would have been to subpoena the records to ensure that the ALJ had a record of the Plaintiff's condition during the relevant time period, rather than drawing *ipse dixit* medical conclusions based on an incomplete set of medical records. The Court is also troubled by the adversarial and accusatory tone struck by the ALJ during the hearing when the issue of Plaintiff's subpoena was discussed. The Court believes that it would behoove both the Plaintiff and the ALJ to ensure that a complete set of Plaintiff's records from the Claude Mandel Clinic are available in this case on remand.

Additionally, Plaintiff argued that the ALJ committed reversible symptom evaluation errors pursuant to Social Security Ruling ("SSR") 16-3p. However, the Social Security Administration recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued her opinion on March 23, 2015. [R. 26.] Therefore, the ALJ properly applied SSR 96-7p Plaintiff's arguments related to SSR 16-3p are moot. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct.

25, 2017). The Court recommends that the ALJ pay particular attention to this ruling, which requires the ALJ to "consider and address reasons for not pursuing treatment that are pertinent to an individual's case." SSR 16-3p. Much of the ALJ's reasoning for finding the Plaintiff's "credibility somewhat limited" was based on the Plaintiff's failure to pursue aggressive treatment or emergency room visits, as well as the fact that Plaintiff did not pursue worker's compensation or long term disability benefits. However, the ALJ failed to consider any of the factors listed in SSR 16-3p (*e.g.*, the inability to pay for more aggressive treatment or emergency room visits) or the Plaintiff's reasons for failing to pursue other benefits (*e.g.*, the he was unaware of his rights and struggling with the loss of his siblings). The ALJ should take care to make such considerations on remand, as per the requirements of SSR 16-3p.

## CONCLUSION

For the following reasons, Plaintiff's motion is granted and the Commissioner's motion is denied. The Administrative Law Judge's ("ALJ") decision is remanded for further proceedings consistent with this opinion.

**ENTER:**

**DATED:**   11/9/2017

_____

Susan E. Cox
United States Magistrate Judge